Good morning, Your Honors, and may it please the Court, Patrick Hayden Counselor Petitioner Cesar Lopez Duarte, and if I may, I'd like to reserve two minutes of my time for rebuttal. Okay. In this case, the immigration judge found Mr. Duarte recoupable on several grounds that require remand. First, the immigration judge relied on a document, the U.S. Visit Form, without providing Mr. Duarte an opportunity to confront it. Now, the government had this document for over three years, but it submitted it as an untimely filing. The document contains numerous defects on its face, but the immigration judge accepted it as dispositive before Mr. Duarte could be heard without questioning the government and without addressing any of the document's apparent defects or irregularities. The second basis for the immigration judge's decision was a statement made during Mr. Duarte's bond proceedings. Now, the government concedes this was legal error, as bond proceedings and legal proceedings must be separate. Finally, the government has relied on a Form I-213, which should be suppressed as the product of an unlawful immigration detainer and a coercive interrogation. So, we think remand is required for the immigration judge to give Mr. Duarte an opportunity to confront and challenge the U.S. Visit Form and for the judge to make a determination without consideration of the bond proceedings or the Form I-213. Now, I'd like to begin with the U.S. Visit Form. In removal proceedings, a respondent facing removal must be given an opportunity to confront and challenge the evidence introduced against him, and in this case, Mr. Duarte did not have that opportunity. It appears that the U.S. Visit Form was created in December of 2012. The government introduced it for the first time in March of 2016, more than three years later. It was stamped as an untimely filing after briefing had closed on Mr. Duarte's motion to suppress a different document. Now, the immigration judge accepted this document as dispositive on the issue of Mr. Duarte's alienage, which in this case is the whole case. It's the ultimate issue. The immigration judge denounced his ruling, did not ask Mr. Duarte if he would like to be heard, did not question the government on his own, no witness was called, and no other evidence in connection with this document was submitted. Now, in our view, the government's delay in introducing this document speaks volumes. I think the document is defective on its face. In particular, again, the immigration judge's conclusion from this document said it was conclusive as to Mr. Duarte's alienage, but four of the six fields for citizenship in this document are blank, four of the six nationality fields in this document are blank, and five of the six place of birth fields are blank. So, in other words, on the question of alienage, more than half of this document is silent. Now, I'd emphasize- Counsel, why is it that some of the information is blank? Why does that invalidate the form? Well, at this stage, the question is whether Mr. Duarte got the hearing that he's entitled to a chance to challenge the form. Now, below, the question will be whether this document or any other evidence can prove by unequivocal and convincing evidence Mr. Duarte's alienage. Now, we think these blanks, which go- Just a minute. So, what's the point of your saying that a lot of the items were not filled in? So, what does that have to do with his ability to challenge the document? So, we think it's important in showing why the right to confront the document is so important in this case, and why there's some risk of prejudice here from the denial of his right to the full and fair hearing. Below, when the government is put to its proof, it may have explanations. But what we know here is that this document is mostly incomplete with respect to alienage. And I focus the court in particular, as the government has, on the first entry in this document. This entry is the most recent one. This is the one the government says corresponds to Mr. Duarte's arrest in 2012, and it is blank with respect to all three fields. Nationality, citizenship, place of birth. It says nothing. So, the only way you can make inferences about alienage is when you start to link that first entry back to prior entries. This document stretches back 11 years. And from the face of this document, that logic appears problematic. We know that an individual's status may well change over the course of 11 years. And we don't know from this document whether any change in status is reflected, is somehow, you know, updated in this database. So, what we're left with is one entry that says nothing as to alienage, and several others that we cannot clearly connect on the question of alienage. Judge Paius. I was just going to ask you, let's just assume that this goes back and you have an opportunity to question the validity of the document. And the government produces a witness who can testify as to how the document is created and all of that. And the IJ weighs the evidence and says, yeah, this shows, this document is admissible, shows he's aliening, he's a citizen of Mexico. Doesn't that end the case? Well, so, in that case, if we go back below, we get the fair hearing. The government will bear that burden. Proven by clear, unequivocal, and convincing evidence. They'll have to- But that ends the case, really? There's nothing else, right? So, I think at this stage, what we know is that we have the procedural problem that needs to be fixed below. Substantively, we know there are real questions, the answers of which may affect the case, which is sufficient for the remand. And I think that a lot of- But if this document is properly authenticated, and at least there's some evidence as to its reliability and it's admitted, then there really is no basis for the motion to suppress. Isn't that correct? Well, I think a lot of this, in terms of how the U.S. visit form is weighed by the immigration judge, once the bond proceedings are not considered as they shouldn't be, it will depend on what the government can provide. We know that blank fields in documents in the immigration context, and in others, can significantly undermine their reliability. The immigration judge won't be at liberty to simply ignore them or to overlook them. So, if this document can't carry, if it's too thin a read to carry the government's burden, then the outcome may well be different, which for purposes- Does the government, in immigration proceedings, does the government have to establish the authenticity of this document, how it was created, how it was generated? How, you know, the information, what's the source of the information? Do they have to present somebody to do that? It's, you know, immigration proceedings are informal. Yeah, I understand. You know, so a couple points. You know, there's, of course, the government's general burden of proof, which, you know, as said, is clear, convincing, and unequivocal evidence. And a document like this, what we know from cases, especially cases involving DHS databases, is that you often see a witness produced. You know, for example, we cite in our brief, the Ecuador decision in the Second Circuit. And there is just an example of what the government might be able to do. They produced a DHS specialist who explained how fingerprint evidence was collected, how it was maintained within a database. And a petitioner can challenge those, you know, that witness, can cross-examine the witness. And it's that type of cross-examination and adversarial treatment that this court called for in cases like Sanapien and in Bondarenko. So, you know, yeah, I think the government can do more and has done more in other cases. We know to substantiate a document with other documents or to witness an affidavit to provide the context that we just don't have in this case. But counsel, aren't government documents given a presumption of regularity? So in this particular, so some circuits have said yes, with respect to certain documents. You know, we discussed in our briefs, the Seventh Circuit decision was considered a different form. There is no presumption of reliability this court has recognized. I didn't say reliability, I said regularity. Yeah, correct. So similar response. Presumptions of regularity may attach. But in all of the cases that we've seen, first, that hasn't been applied to this particular document, but also that presumption may be lost when we start to see indicia, you know, of unreliability, of perhaps of carelessness in drafting the document or putting it together. Again, we think the incomplete nature of this document and really the lack of a record around it and the lack of findings to support it, you know, are sufficient to raise those questions and really, really do call for a hearing below. I see I have one minute left, so I would like to reserve. That's fine. Okay, we'll hear from the government. Good morning, Your Honors. Walter Burkini on behalf of the government.  Now, he never raised the challenge on the reliability of this document at the agency level. And frankly, I think that's because there would have been no basis to do so. The information contained in this document is highly reliable to establish his identity. It's raw data populated into the document by a database search through the petitioner's own fingerprints that was assigned a unique FIN number. So all the information and all of the six listed encounters necessarily relate to petitioner and nobody else. Fingerprint evidence is just a strong form of biometrics modality. Why wasn't there some affidavit submitted in support of this document? I believe, Your Honor, that, you know, the document, the information there speaks for itself for practitioners who are at the immigration court level. I don't think that there would have been any reason to doubt that the document as it pertains to the petitioner's identity is highly reliable to establish it. So I don't think that would have been necessary from the perspective of the immigration judge at the time. I have one preliminary question. Uh, it was when it was submitted, it was marked late. Is that correct? Your Honor, that's correct. But I know for the life of me, I cannot wait one second. One second. What does it mean when IJ marks a document as late? What's the significance of that? Well, the local practice rules for the immigration court states that the response to a motion is due 10 days after the motion is filed. And so, had the document been actually late, it would have meant that the immigration judge would have had the discretion to decide how to treat it. But I don't understand, I couldn't understand why the document was marked as late. I think it was just an inadvertent error because the motion to suppress was filed on March 22, 2016, and DHS's response was filed on March 30, 2016. And the fact that I think that nobody raised any issues with respect to the timeliness of the filing, which I think would tend to show that this was not something that was considered to be late by the immigration judge or the parties. So, I don't know, yeah, I didn't catch that when I first briefed the issue. But yeah, I didn't understand this filing to have been late. Counsel, this is Judge Rawlinson. Do you take issue with opposing counsel's representation that the petitioner did not have the opportunity to challenge the admission of this form? Yes, I do, Your Honor. I recognize that the immigration judge started the hearing by announcing his ruling on the motion to suppress. But at the immigration court level, again, according to their own practice rules, an objection to the evidence can be made at any time. And there was continuing discussion about the case after the immigration judge made his ruling. And the petitioner at no point raised an objection to the evidence or any sort of confrontation challenge relating to the reliability of this document. And in fact, he wanted the immigration judge to issue an interlocutory order so that he could appeal that to the IJ. And then after further discussion, they decided to issue a final order of removal. It's just there's nothing in the hearing to show that the immigration judge would not have entertained a challenge had he made one. There's nothing to show that he didn't have an opportunity to do so. But the bottom line is that the form, again, I will go back to the reliability of the form. And I would highlight... Can I ask you a question, Judge Fregersen? Yes, Your Honor. Are there any cases that say, just as a matter of an absolute rule, that these forms are always admissible without challenge? Oh, no, Your Honor. I think it absolutely depends on the nature of the information that is in the form. When a form is sloppily made or when it contains contradictory information, it absolutely would be open to a challenge. But I think in this case... So in this case, though, what do you make of all these blanks? And are we sort of going down the road where, you know, the immigration judge, you know, can just accept the reliability of the information, even if some of the blanks are... Even if there are a certain number of blanks, then we look and say, well, maybe there are too many blanks. Maybe they weren't material blanks. You know, doesn't a better practice seem to be to just allow someone to confront this document and have some reasonable balance between the, you know, the authenticity and reliability of it and the ability of a petitioner to just say, you know, it's not me or that's a mistake. I mean, forms have mistakes, don't they? Your Honor, it is a better practice to allow petitioners to challenge evidence, of course. And I would submit that here the petitioner had that opportunity to do so. But going back to the blanks, you know, all of the information contained in this form and all of the six entries were matched by petitioner's own fingerprints. They necessarily relate to him. So even though there are some blanks, there are entries that outline with very specificity his identity, et cetera. And I would point to the earliest one from October 2001. And I know it's a bit of an alphabet soup, but this encounter can be easily translated. And it is the DOS, that is the Department of State, issuing petitioner a PCC. Hold on one second. Counselor, just one second. Well, I want to follow you as you. And that's at AR 112. Okay, got it. So this original entry is the Department of State DOS issuing the BCC border crossing card to petitioner on October 30th, 2001. And together with this issuance, they also placed a document ID on the border crossing card. And that's the TJN number at the last line. So this encounter here lists petitioner's name, date of birth, citizenship as Mexico, birthplace, it has his pictures. And again, it has this document ID. And then the next four entries are petitioner's, encounters are petitioner's entries into this country using this border crossing card because they again reference this document ID TJN. So taken together, these documents, these encounters necessarily relate to each other by not only fingerprint evidence, which is highly reliable, but then also through this the petitioner is who he is and that he was entering the country from Mexico. So your explanation is pretty good. But don't you think that that should have been presented to the IJ? It should be in the record? Your Honor, I would say that, you know, what you just explained is not in the record. Not to that level of detail, Your Honor. But if you look at AR-41, when the immigration judge sustained the reviewability charges, he went into broad parameters why he thought that this document was reliable. He discussed the U.S. visit system. He goes to the printouts showing various encounters with respondents, petitioner below, as he came through customs and border protection entry points. And then pointed out that, you know, these documents show respondents, petitioner, date of birth, nationality, birthplace, go back to 2001. So I think that the reason it would have been certainly the better practice for DHS to have explained this document in more detail. Counsel, this is Judge Rawlinson. Is it fair to say that those questions could have been raised by the petitioner at the time this form was presented? Yes, absolutely, Your Honor. Again, I think that under the immigration court's more relaxed approach to the rules of evidence, an objection can be made to the introduction of evidence at any point. And had he made an objection after the immigration judge... When was the first time the petitioner saw the document? He would have received a copy upon the DHS's filing of the response. So one week before the hearing. So he had the document in possession at least one week before the hearing, which was on April 6th. Or, you know, six days. So he had almost a week before. And he would have been able... There's no... The immigration court rules do not preclude respondents below from filing written objections before the hearing. He got the document. And did the judge say anything that would lead him to believe that he was precluded from making any arguments concerning the accuracy of the information? I've read the transcript multiple times. I cannot see anywhere where the immigration judge seems to be stating that that issue was foreclosed. It seems to have been an open-ended discussion about the case. And the immigration judge ended the hearing by stating whether anybody had any questions about anything during the proceedings. So, no, I think that the immigration judge gave the petitioner plenty of opportunity to raise a confrontation challenge had he wanted to do so. But... Well, he makes it pretty clear at the very beginning of the hearing. Was it the motion to suppress? Is that when this all takes place? Yes. The immigration judge... So, after reviewing the two briefs, I'm going to not suppress the form I-213 and find it in favor of the Department of Homeland Security. Right. The respondent does not contest that the initial arrest was legal. But that was not addressing the U.S. visit turnout. That statement, was it? Yes, Your Honor. I think it is addressing the U.S. visit turnout as well. It's because it was based on the fact that DHS had independent evidence of alienage on the fingerprint evidence. So, why would that discourage the petitioner from challenging then if the immigration judge had already indicated how he was going to rule? It would not have discouraged him because the petitioner could have objected to the evidence at any point during the hearing. The next question by the judge to counsel was, and having said that, Mr. Prasad, are there applications for relief in the file? No, Your Honor, not that I'm aware of. Well, Your Honor, for sure, the immigration judge could have been affirmative in asking for an objection, but the immigration judge, the form of the discussion does not appear that the immigration judge would have precluded any confrontation challenge to the document. And the fact that the petitioner didn't raise this issue to the board, or even on a motion to reconsider with the immigration judge, I think would show that this was not even in the counsel's radar. Because again, I think at the immigration court level, the attorneys who see these documents day in and day out, they would have known that at least as to the petitioner's identity and alienage, this document was as reliable as it gets based on fingerprint evidence, has date of birth, has photographs, has, you know, has all the information there is, and none of it is inconsistent. I think it's hard to say that without someone confronting something. You know, you can certainly match identities with fingerprints, but the underlying data can be wrong. People can have the same last names. You know, I've seen plenty of cases where the police arrest the wrong person. And, you know, it's just to say that this form is absolutely reliable and that there's no need to have, you know, the ability to confront this document, maybe a losing argument, but to say that there's enough here that he doesn't get to ask those questions seems problematic. Counsel, what's our standard of review here? Well, Your Honor, to the extent that the petitioner has exhausted this issue, the issue of confrontation of the evidence, I think it would be a constitutional claim and it would be reviewed de novo. But I think that it's best viewed as a sufficiency of the evidence challenge, because that is something that the agency would have reached on the merits in stating that this document is sufficient to establish removability. Because it's this document, there's another document, a text document right afterwards, but one depends on the other. So I think it would have been, then the court, as a sufficiency of the evidence challenge, it would be a substantial evidence to support the agency's removability findings. This is kind of a dilemma because usually with constitutional issues, sometimes with constitutional issues, it's something that the agency didn't have the ability to correct. But in this case, the agency would have had the ability to correct the error if it had been brought to the agency's attention. Absolutely, Your Honor. And that's one of the reasons why the petitioners failed to exhaust this issue below. There's a statute in place that the agency's tasked with making sure that it's, to allow petitioner to examine evidence presented against him. And at any moment, he could have made this confrontation challenge by Jay or the board on the field of the court, and he failed to do so. Okay, I think we should hear from the petitioner on his rebuttal. Thank you, Your Honor. Sure, so I just want to touch on a few of the points the court has raised. First, as to timeliness, I will, you know, start by saying that this document we know was stamped on timely filing. Our understanding is that that stamp came from the immigration court. The government has never argued that the submission was timely. Today we hear a suggestion that perhaps it was. But when Mr. Duarte saw this document for the first time, his understanding certainly from the immigration court's own determination with that stamp was that the document was untimely. I think we would defer to the immigration court's application of the practice manual and its determination as to timeliness. And our understanding in general, which again, this hasn't been briefed, is that submissions generally must be made 15 days before the hearing. This document is not, which is our understanding of why it was stamped as it was. But is there any question that the court accepted the document? We know that the court accepted the document from the record of this. We see the court accepted the document. We see the stamp and we don't see any acknowledgement as the court has noted. He began with a ruling, didn't acknowledge the untimeliness and didn't acknowledge not just sort of the blanks, the government's delay in introducing the document, all of the issues that we sort of see from the face of it. None of that was addressed. We have a ruling in less than half a page of transcript finding alienage conclusively against Mr. Duarte. In the few minutes, in the moment or two that you have left, the government raised exhaustion on this issue, that it was not properly presented to the board. What's your response to that? So, you know, so as we, you know, as we say in our brief, we believe the issue was adequately presented to the BIA through Mr. Duarte's brief to the BIA in a few particular ways. Bottom line is that Mr. Duarte asked for a remand to the immigration judge for a factual inquiry into the U.S. visit report. Second, he said the immigration judge erred by making his own factual findings regarding U.S. visit report in the absence of documentary evidence. So he challenged the same process by which this form was introduced and used. And he asked for the same belief. He asked for the remand. And to Judge Rawlinson's point, Judge Rawlinson points out that when we look at exhaustion, the question is often, well, did the agency have the chance to correct its error? Mr. Duarte gave the agency that window. He said remand or the factual inquiry, so we can figure out what's going on with this document. And the BIA said no. Did he challenge the reliability of the document? So he did in his focus on some of the fingerprint information. The document reflected. He said that it was not clear where the fingerprints came from or why. He raised some natural questions, which I think anybody would raise when you see that first entry in this document, how it is so blank as to the date fingerprinted. And of course, that first entry also blank as to citizenship, nationality, place of birth. It's the core of this case. And again, it is blank on the question of nationality. So, you know, we know that the standards applied flexibly. We think Mr. Duarte certainly did enough through his brief to the BIA to put the BIA on notice. And again, we would remind the court that this same point was raised before the motions panel in the government's motion to dismiss. The motions panel resulted in Mr. Duarte's favor. We would encourage this court to do the same. Okay, thank you. Thank you, counsel. I'll let you go over your time. So we appreciate your arguments this morning. And the matter is submitted at this time.
judges: Paez, Rawlinson, Pregerson